# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| Infogation Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Toyota Motor Corporation, Toyota Motor North America, Inc., Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc.,<br><br>Defendant. | Case No. 2:23-cv-359<br><br>Jury Trial Demanded |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Infogation Corporation ("Infogation" or "Plaintiff") hereby files this Original Complaint for Patent Infringement against Toyota Motor Corporation, Toyota Motor North America, Inc., Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc. ("Toyota" or "Defendant"), and alleges, upon information and belief, as follows:

## THE PARTIES

1.     Infogation Corporation is a corporation organized and existing under the laws of the State of Texas with its principal place of business at 1409 Constellation Drive, Allen, Texas 75013.

2.     Upon information and belief, Defendant Toyota Motor Corporation ("TMC") is a corporation organized and existing under the laws of Japan with a principal place of business at 1 Toyota-cho, Toyota City, Aichi Prefecture 471-8571, Japan.  On information

and belief, TMC does business itself, or through its subsidiaries, affiliates, and agents, in the State of Texas and the Eastern District of Texas.

3.      Upon information and belief, Defendant Toyota Motor North America, Inc. ("TMNA") is a corporation organized and existing under the laws of the State of California with its principal place of business at 6565 Headquarters Drive W1-3C, Plano, Texas 75024.  On information and belief, TMNA is the wholly owned operating subsidiary of TMC and is responsible for all operations of TMC in the United States, including research and development, manufacturing, sales, offers for sale, marketing, importation, and distribution of automotive vehicles from Toyota-managed brands (e.g., Toyota, Lexus, and Scion). According to its website, TMNA is "headquartered in Plano, Texas, [and] brings together Toyota's marketing, sales, engineering and manufacturing arms in North America on one shared, state-of-the-art campus."  (https://www.toyota.com/usa/operations/map.html#!/tcal).

4.      Upon information and belief, Defendant Toyota Motor Engineering & Manufacturing North America, Inc. ("TEMA") is a corporation organized and existing under the laws of the State of Kentucky with its principal place of business at 6565 Headquarters Drive W1-3C, Plano, Texas 75024.  On information and belief, TEMA is a wholly owned subsidiary of TMC and is responsible for research and development and manufacturing of automotive vehicles from Toyota-managed brands (e.g., Toyota and Lexus) in the United States.  According to its website, TEMA "is responsible for engineering design and development, R&D and manufacturing activities in the U.S.… and is also responsible for manufacturing plants across North America" including in the State of Texas. (https://www.toyota.com/usa/operations#!/Engineering-Manufacturing).

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    2

5.    Upon information and belief, Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS") is a corporation organized and existing under the laws of the State of California with its principal place of business at 6565 Headquarters Drive W1-3C, Plano, Texas 75024.  On information and belief, TMS is a wholly owned subsidiary of TMC and is responsible for sales, marketing, and distribution of automotive vehicles from Toyota-managed brands (e.g., Toyota and Lexus) in the United States.

6.    On information and belief, Toyota designs, manufactures, distributes, imports, offers for sale, and/or sells in the State of Texas and the Eastern District of Texas automotive vehicles and components thereof that infringe the Patents-in-Suit, contributes to inducement by others, and/or induces others to commit acts of patent infringement in the State of Texas and the Eastern District of Texas.  Toyota has regular and established places of business, at which it has committed acts of infringement and placed the accused products into the stream of commerce, throughout the State of Texas and the Eastern District of Texas.

## JURISDICTION AND VENUE

7.    This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, et seq.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.    This Court has personal jurisdiction over Defendant.  Defendant regularly conducts business and has committed acts of patent infringement and/or has induced acts of patent infringement by others in this Judicial District and/or has contributed to patent infringement by others in this Judicial District, the State of Texas, and elsewhere in the United States.

9.    This Court has at least specific personal jurisdiction over Defendant because it has substantial contacts and conducts business in the State of Texas and in this District and has

been infringing, contributing to the infringement of and/or actively inducing others to infringe claims of the Patents-in-Suit (defined below) in Texas and elsewhere by virtue of its manufacture and importing of automobiles with Toyota's Audio Multimedia system, including through its subsidiary distributors as alleged.

10.     Defendant's control and contractual relationship with its subsidiaries located in this District to sell or at the least import and sell Defendant's products within the United States is alone sufficient to establish minimum contacts with the United States. Defendant, through its website, shows it retains control over directing its customers to its U.S. distributor for the Accused Instrumentalities (defined below).

11.     Defendant directly conducts business extensively throughout the State of Texas, by distributing, making, using, offering for sale, selling, and advertising its products and services in the State of Texas and in this District.  Defendant has purposefully and voluntarily made its business services, including the infringing systems and services, available to residents of this District and into the stream of commerce with the intention and expectation that they will be purchased and/or used by consumers in this District.

12.     Venue is proper in the Eastern District of Texas as to Defendant Toyota Motor Corporation pursuant to at least 28 U.S.C. §§ 1391(b) and (c) and 1400(b), as well as under the "alien venue rule."  *Brunette Machine Works, Ltd. v. Kockum Indus., Inc.,* 406 U.S. 706 (1972); *In re HTC Corp.,* 889 F.3d 1349 (Fed. Cir. 2018); Weatherford *Tech. v. Tesco Corp.,* 2018 WL 5315206 at *2-3 (E.D. Tex. Oct. 26, 2018).  As noted above, Defendant Toyota Motor Corporation is a foreign entity which maintains a regular and established business presence in the United States.

13.     Venue is also proper in this District as to Defendants Toyota Motor North America, Inc.,
Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales,
U.S.A., Inc. pursuant to at least 28 U.S.C. §§ 1391(c)(2) and 1400(b).  As noted above,
Defendant Toyota Motor North America, Inc., Toyota Motor Engineering & Manufacturing
North America, Inc., and Toyota Motor Sales, U.S.A., Inc. maintain a regular and
established business presence in this District.

## PATENTS-IN-SUIT

14.     Plaintiff is the sole and exclusive owner, by assignment, of U.S. Patent 10,107,628 (the
"'628 Patent"), U.S. Patent 8,898,003 (the "'003 Patent"), U.S. Patent 8,406,994 (the "'994
Patent") and U.S. Patent 6,292,743 (the "'743 Patent") (hereinafter collectively referred to
as the "Patents-in-Suit").

15.     By written instruments executed, Plaintiff is assigned all rights, title, and interest in the
Patents-in-Suit.  As such, Plaintiff has sole and exclusive standing to assert the Patents-in-
Suit and to bring these causes of action.

16.     The Patents-in-Suit are valid, enforceable, and were duly issued in full compliance with
Title 35 of the United States Code.

17.     The Patents-in-Suit have been cited in over 200 patents issued to well-known industry
leaders, including industry giants Toyota, Google, Microsoft, Garmin, Honda, TomTom,
Aol, Mapquest, Facebook, Verizon, Sprint, Cisco, Samsung, NEC, Nokia, Alcatel, Pioneer,
Phillips, Lucent, IBM, Intel, Motorola, Sony, Toshiba and Kaarta.

18.     The Patents-in-Suit each include numerous claims defining distinct inventions.  No single
claim is representative of any other.

19.    The priority date of the '628 Patent is at least as early as August 11, 2007. It generally relates to the area of Global Positioning System (GPS), and, in particular, to navigation on non-linearly scaled maps and how to display such non-linearly scaled maps with proper colors on a display screen. As of the priority dates, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.   Indeed, the Patents-in-Suit overcame a number of specific technological problems in the industry and provided specific technological solutions.

20.    The priority date of the '003 Patent and the '994 Patent is at least as early as November 7, 2008. The '003 Patent and the '994 Patent generally relate to the area of Global Positioning System (GPS). In particular, the present invention is related to electronically generated map with one or more objects therein being realistic. As of the priority dates, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.  Indeed, the Patents-in-Suit overcame a number of specific technological problems in the industry and provided specific technological solutions.

21.    The priority date of the '743 Patent is at least as early as January 6, 1999. It generally relates to a mobile navigation system and apparatus, and more particularly to a distributed navigation system having a wireless connection to a server for calculating optimal routes using real-time data. As of the priority dates, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.  Indeed, the Patents-in-Suit overcame a number of specific technological problems in the industry and provided specific technological solutions.

22.    The claims of the Patents-in-Suit are patent eligible under 35 U.S.C. § 101, 102, 103, and 112, as reflected by the fact that three different Patent Examiners all agreed and allowed the

Patents-in-Suit over extensive prior art as disclosed and of record during the prosecution of the Patents-in-Suit. *See Stone Basket Innov.,* 892 F.3d at 1179 ("when prior art is listed on the face of a patent, the examiner is presumed to have considered it") (citing *Shire LLC v. Amneal Pharm., LLC,* 802 F.3d 1301, 1307 (Fed. Cir. 2015)); *Exmark Mfg. v. Briggs & Stratton,* 879 F.3d 1332, 1342 (Fed. Cir. 2018).

23. After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiners allowed all of the claims of the Patents-in-Suit to issue. In so doing, it is presumed that Examiners used their knowledge of the art when examining the claims. *See K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014). It is further presumed that Patent Examiners had experience in the field of the invention, and that the Patent Examiners properly acted in accordance with a person of ordinary skill. *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

24. The claims of the Patents-in-Suit are novel and non-obvious, including over all non-cited art that is merely cumulative with the referenced and cited prior art. *See* 37 C.F.R. § 1.56(b) (information is material to patentability when it is not cumulative to information already of record in the application); *see also AbbVie Deutschland GmbH v. Janssen Biotech,* 759 F.3d 1285, 1304 (Fed. Cir. 2014); *In re DBC,* 545 F.3d 1373, 1382 (Fed. Cir. 2008). Likewise, the claims of the '628 Patent are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by the Examiners. *See, e.g., St. Clair I.P. Consultants v. Canon, Inc.,* 2011 WL 66166 at *6 (Fed. Cir. 2011); *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002);

*In re Koninklijke Philips Patent Litigation,* 2020 WL 7392868 at *19 (N.D. Cal. 2020); *Standard Oil v. American Cyanamid,* 774 F.2d 448, 454 (Fed. Cir. 1985) (persons of ordinary skill are presumed to be aware of all pertinent prior art).

## THE ACCUSED INSTRUMENTALITIES

25.     Upon information and belief, Defendant makes, sells, advertises, offers for sale, uses, or otherwise provides an apparatus and method for navigation systems covered by the Patents-in-Suit, including but not limited to, Toyota's Audio Multimedia system included in personal vehicles, in all trims and configurations, such as listed in Exhibit A, among other vehicles, including all augmentations to these platforms or descriptions of platforms (the "Accused Instrumentalities").



*See***, https://www.toyota.com/connected-services/ (emphasis added) (screenshot of Defendant's website describing and showing Toyota's Audio Multimedia system with maps).**

## COUNT I
## Infringement of U.S. Patent No. 10,107,628

26.     Plaintiff incorporates the above paragraphs by reference.

27.     Defendant has been on actual notice of the '628 Patent at least as early as the date it received service of the Original Complaint in this litigation.

28.     Plaintiff or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '628 patent, thus the damages period begins at least as early as six years prior to the date of service of the Original Complaint in this litigation.

29.     Defendant manufactures, sells, offers for sale, owns, directs, and/or controls the operation of the Accused Instrumentalities and generates substantial financial revenues and benefits therefrom.

30.     Defendant has directly infringed and continues to directly infringe the claims of the '628 Patent.  As exemplary, Claim 1 is infringed by making, using, importing, selling, and/or offering for sale the Accused Instrumentalities.  Defendant directly makes and sells the infringing Accused Instrumentalities at least because it is solely responsible for putting the infringing systems into service by directing or controlling the systems as a whole and by obtaining the benefits therefrom.  More specifically, and on information and belief and as represented in the videos and figures above and below, with respect to the Accused Instrumentalities, Defendant:

- (i) practices and provides downloading from a network into a computing device an artistic map, the artistic map being non-linearly scaled and including various objects being exaggeratedly shown on the computing device to facilitate a user using the computing device to view and select one of the objects to navigate thereto in the artistic map, wherein the computing device is portable, equipped with navigation capability and provides a traveling guidance based on a geographical map, the artistic map is not used directly by the computing device for navigation, each of the objects is

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    9

represented by a plurality of points on a display of the computing device, and the geographical map is not being displayed on the display;



See, *https://www.toyota.ca/toyota/en/about/connected-services/multimedia*



See, *https://www.toyota.com/connected-services/*  *(emphasis added)*

With Connected Services activated and the available Drive Connect Cloud Navigation, the crisp and clear map screen can be explored with zoom, pan and tilt functionality with intuitive touch control.

The cloud navigation includes Google Point–Of–Interest search capability, so navigating to a favorite destination has never been easier and you can also share your ETA with contacts in your phone book. Being Wi-Fi capable allows for system and navigation updates to be installed "over-the-air" so the vehicle will always be up to date. New roads constructed? OTA updates will allow the map to include those too.

See, https://pressroom.toyota.com/toyotas-all-new-audio-multimedia-system-is-here-and-it-is-a-game-changer/ (emphasis added)



See, https://assets.sia.toyota.com/publications/en/omnav-s/OM0C033U/pdf/OM0C033U.pdf  (page 139)(emphasis added) (annotated)

### Starting route guidance

After setting a destination, the search for a route will begin. When the search for a route is completed, the full route map screen (the full route from the current location to the destination) will be displayed. On the full route map screen, the desired route can be selected or the route information can be checked.

See, https://assets.sia.toyota.com/publications/en/omnav-s/OM0C033U/pdf/OM0C033U.pdf  (page 144)(emphasis added)



See, https://assets.sia.toyota.com/publications/en/omnav-s/OM0C033U/pdf/OM0C033U.pdf  *(page 144) (annotated)*



See, https://www.youtube.com/watch?v=kBjOMAnpNTY  *(runtime 1:40) (annotated)*



*See,* *https://www.youtube.com/watch?v=kBjOMAnpNTY* *(runtime 1:45) (annotated)*



*See,* *https://assets.sia.toyota.com/publications/en/omnav-s/OM0C033U/pdf/OM0C033U.pdf (page 28) (emphasis added) (annotated)*

**Touch and hold operation**

If a desired point on the map screen is touched and held, the full route map screen to the selected point will be displayed.

**1**  **Touch and hold the desired point.**



*See, https://assets.sia.toyota.com/publications/en/omnav-s/OM0C033U/pdf/OM0C033U.pdf  (page 29) (emphasis added)*

**2**  **Full route map screen will be displayed for the selected point.**



*See, https://assets.sia.toyota.com/publications/en/omnav-s/OM0C033U/pdf/OM0C033U.pdf  (page 29)(emphasis added)*



*See,* *https://www.youtube.com/watch?v=kBjOMAnpNTY* *(runtime 0:43) (annotated)*



*See,* *https://www.youtube.com/watch?v=kBjOMAnpNTY* *(runtime 0:52) (annotated)*



*See,* *https://assets.sia.toyota.com/publications/en/omnav-s/OM0C033U/pdf/OM0C033U.pdf* *(page 147) (annotated)*

| A | Displays the distance to the next turn and an arrow indicating the turn direction. |
|---|---|
|   | Touch to display the directions list. |
| B | Displays information about the next guidance point. |
|   | [ ˄ ][ ˅ ]: Display/hide the information for the next guidance point. |
| C | Displays route information |
|   | • When driving along the guidance route, displays the distance, estimated travel time, and estimated time of arrival at the destination. |
|   | • When not driving along the guidance route, [**Proceed to the highlighted**] will be displayed. |
|   | • Touch [ ˅ ] to display the destination information screen. |
| D | Displays guidance points. |
| E | Displays the guidance route. |
| F | Displays the current position of the vehicle. |
| G | Stops the active navigation. |
| H | Mutes voice guidance. |

*See,* *https://assets.sia.toyota.com/publications/en/omnav-s/OM0C033U/pdf/OM0C033U.pdf* *(page 147)*

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    16

**How do I activate the Drive Connect trial?** 

Drive Connect is part of a suite of Connected Services and includes:

-Cloud Navigation *
-Intelligent Assistant *
-Destination Assist *

Drive Connect requires an active trial or paid subscription. *
The Drive Connect trial can be activated the same time you register and add your vehicle to the Toyota app. *

*See,* https://www.toyota.com/connected-services/drive-connect/ *(emphasis added) [FAQ Drive connect]*

◼ **Linking to a Toyota account**
- An active Toyota account is required to use a profile.
- Registered profiles are saved in the cloud, so even if a profile is deleted in the vehicle, it is not deleted from the cloud.
- By using the Toyota app and linking to a Toyota account, a profile can be loaded from the cloud in any vehicle.

*See,* https://assets.sia.toyota.com/publications/en/omnav-s/OM0C033U/pdf/OM0C033U.pdf  *(page 46)(emphasis added)*



*See,* [https://www.youtube.com/watch?v=HdFC-2cdFq0](https://www.youtube.com/watch?v=HdFC-2cdFq0) *(runtime 1:08) (annotated)*



*See,* *https://apps.apple.com/us/app/toyota/id1455685357* *(emphasis added)*

- (ii) practices and provides receiving in the computing device a selection on the one of the objects from the user as a selected object;



See, *https://www.youtube.com/watch?v=kBjOMAnpNTY*  *(runtime 1:40) (annotated)*



See, *https://www.youtube.com/watch?v=kBjOMAnpNTY*  *(runtime 1:45) (annotated)*

- (iii) practices and provides determining by the computing device a pair of coordinates for one of the points on the selected object;

### How does the navigation system work?

Toyota' navigation system uses signals from Global Positioning System (GPS) satellites and in-vehicle sensors which the in-vehicle navigation ECU uses to calculate vehicle location.

*See,* https://support.toyota.com/s/article/How-does-the-navigati-10380?language=en_US  *(emphasis added)*



### ▮ Touch and hold operation

If a desired point on the map screen is touched and held, the full route map screen to the selected point will be displayed.

**1  Touch and hold the desired point.**

*See,* https://assets.sia.toyota.com/publications/en/omnav-s/OM0C033U/pdf/OM0C033U.pdf  *(page 29) (emphasis added)*

- (iv) practices and provides transforming in the computing device the pair of coordinates to a physical point represented by a pair of latitude and longitude in the geographical map not being shown on the display, the points representing the selected object having different pairs of coordinates, but all of the different pairs of coordinates for the selected object corresponding substantially to the physical point when said transforming is performed;

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                      21



*See,* *https://assets.sia.toyota.com/publications/en/omnav-s/OM0C033U/pdf/OM0C033U.pdf* *(page 29) (emphasis added)*

- (v) practices and provides detecting a current location of the computing device in the geographical map;



*See,* *https://assets.sia.toyota.com/publications/en/omnav-s/OM0C033U/pdf/OM0C033U.pdf* *(page 79) (annotated)*

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                        22

- (vi) practices and provides determining according to the geographical map a navigational direction from the current location to the one of the objects being selected; and



*See,* [https://assets.sia.toyota.com/publications/en/omnav-s/OM0C033U/pdf/OM0C033U.pdf](https://assets.sia.toyota.com/publications/en/omnav-s/OM0C033U/pdf/OM0C033U.pdf) *(page 144) (annotated)*

- (vii) practices and provides showing the navigational direction on the artistic map being displayed.



*See, https://assets.sia.toyota.com/publications/en/omnav-s/OM0C033U/pdf/OM0C033U.pdf (page 147) (annotated)*

31.     Further on information and belief, Defendant directly uses the infringing Accused Instrumentalities at least because it assembled the combined infringing elements and makes them collectively available in the United States, including via its Internet domain web pages and/or software applications, as well as via its internal systems and interfaces.  Further, and on information and belief, Defendant has directly infringed by using the infringing Accused Instrumentalities as part of its ongoing and regular testing and/or internal legal compliance activities.  Such testing and/or legal compliance necessarily requires Defendant to make and use the Accused Instrumentalities in an infringing manner.  Still further, Defendant is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Instrumentalities.

32.     As shown above, Defendant is making, using, and offering for sale the Accused Instrumentalities.

33.     Additionally, upon information and belief, Defendant owns, directs, and/or controls the infringing method operation of the Accused Instrumentalities.

34.     On information and belief, the infringement of the '628 Patent by Defendant will now be willful through the filing and service of this Complaint.  The '628 Patent is not expected to expire before July 26, 2033.

35.     In addition or in the alternative, Defendant now has knowledge and continues these actions and it indirectly infringes by way of inducing direct infringement by others and/or contributing to the infringement by others of the '628 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing services for use in systems that fall within the scope of the claims of the '628 Patent. This includes without limitation, one or more of the Accused Instrumentalities by making, using, importing offering for sale, and/or selling such services, Defendant injured Plaintiff and is thus liable to Plaintiff for infringement of the '628 Patent under 35 U.S.C. § 271.

36.     Now with knowledge of the '628 Patent, Defendant induces infringement under Title 35 U.S.C. § 271(b).  Defendant will have performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc*., 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

37.  Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd*., 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

38.  Defendant has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

39.  In addition, on information and belief, and based in part upon the clear infringement by the Accused Instrumentalities, Defendant has a practice of not performing a review of the patent rights of others first for clearance or to assess infringement thereof prior to launching products and services.  As such, Defendant has been willfully blind to the patent rights of Plaintiff.

40.  The foregoing infringement on the part of Defendant has caused past and ongoing injury to Plaintiff.  The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '628 Patent.

41.  Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

## COUNT II
### Infringement of U.S. Patent No. 8,898,003

42.    Plaintiff incorporates the above paragraphs by reference.

43.    Defendant has been on actual notice of the '003 Patent at least as early as the date it received service of the Original Complaint in this litigation.

44.    Plaintiff or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '003 patent, thus the damages period begins at least as early as six years prior to the date of service of the Original Complaint in this litigation.

45.    Defendant manufactures, sells, offers for sale, owns, directs, and/or controls the operation of the Accused Instrumentalities and generates substantial financial revenues and benefits therefrom.

46.    Defendant has directly infringed and continues to directly infringe the claims of the '003 Patent.  As exemplary, Claim 1 is infringed by making, using, importing, selling, and/or offering for sale the Accused Instrumentalities.  Defendant directly makes and sells the infringing Accused Instrumentalities at least because it is solely responsible for putting the infringing systems into service by directing or controlling the systems as a whole and by obtaining the benefits therefrom.  More specifically, and on information and belief and as represented in the videos and figures above and below, with respect to the Accused Instrumentalities, Defendant:

- (i) practices and provides displaying the map in accordance with a location determined by the GPS receiver, wherein the map shows a route on which the GPS receiver is indicated moving along;

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                  27

- (ii) practices and provides superimposing images representing objects onto the map, wherein the objects resembles structures or settings along the route, the images are superimposed along the route to create a 3D impression around the location, wherein the structures or settings include one or more of landmarks, signs, significant buildings, and exit designs, a perspective of the structures or settings changes in accordance with a direction the GPS receiver is moving, the map is not changed relatively while the images being imposed change as the structures or settings change; and

- (iii) practices and provides changing the images with different color effects in reference to an input from at least one source about conditions of the location at a time that the map is displayed on the GPS receiver, making the map resembling an electronically generated map with a certain level of realism in accordance with surrounding of the location of the GPS, wherein an icon of a vehicle in the map shows that headlights are on when the vehicle is supposed to turn on its headlights.



*See,* *https://www.youtube.com/watch?v=mAf9uWFKLvo* *(runtime 1:20)*



*See,* *https://www.youtube.com/watch?v=A2KDaS1Mc0k* *(runtime 2:27)*



*See,* *https://www.youtube.com/watch?v=A2KDaS1Mc0k* *(runtime 2:30)*

## Changing the Brightness on Your Toyota Vehicle's Infotainment Screen

As for more general guidelines, here's what Toyota owners should know. On newer Toyota vehicles, there is a menu button located to the left of the infotainment screen. By clicking this, you will see a list of options. Toward the bottom right of the screen, there will be an option labeled "display."

By accessing this screen, you will be able to not only modify the brightness of the infotainment screen, but also change the brightness of the rear-view camera. Most Toyota vehicles will allow you to choose options for Day Mode, Night Mode, and Auto; you can also manually increase and decrease brightness according to your needs.

Again, if you have any questions about how to manage this function of your new Toyota, we welcome you to contact us online or swing by our dealership at any time.

*See,* https://www.serratoyota.com/how-to-change-the-screen-brightness/ *(emphasis added)*

- [Screen]

| Setting | Description |
|---|---|
| [Display] | Set whether to turn the screen display on or off. If the screen is turned off, nothing will be displayed on the screen and only audio will be played.<br><br>To display the screen again, touch the screen and touch the button in the center of the screen. |
| "Mode" | |
| [Automatic]*1 | Automatically change the screen to day or night mode in accordance with whether the headlight is turned on or off. |
| [Daytime (light)] | When [Automatic] is turned off, you can manually change to day mode. |
| [Nighttime (dark)] | When [Automatic] is turned off, you can manually change to night mode. |
| [Brightness] | Adjust the screen brightness. |

*See,* https://assets.sia.toyota.com/publications/en/omnav-s/OM0C033U/pdf/OM0C033U.pdf *(page 61)(emphasis added)*

| Setting | Description |
|---|---|
| [Daylight savings] | When [**Set date & time by GPS**] is turned off, you can set daylight saving time to [**Auto**], [**On**] or [**Off**]. |
| [Set time automatically] | Use GPS information to automatically set the time. |
| [Set time manually] | When [**Set time automatically**] is turned off, you can manually set the time. |
| "Date" | |
| [Format] | Change the date display format. (MM/DD/YYYY, DD/MM/YYYY, YYYY/MM/DD, etc.) |

*See,* https://assets.sia.toyota.com/publications/en/omnav-s/OM0C033U/pdf/OM0C033U.pdf   *(page 58) (emphasis added)*



*See,* https://www.youtube.com/watch?v=DjiL93yvhgU  *(runtime 2:25) (annotated.*

47.    Further on information and belief, Defendant directly uses the infringing Accused Instrumentalities at least because it assembled the combined infringing elements and makes them collectively available in the United States, including via its Internet domain web pages and/or software applications, as well as via its internal systems and interfaces.  Further, and

on information and belief, Defendant has directly infringed by using the infringing Accused Instrumentalities as part of its ongoing and regular testing and/or internal legal compliance activities.  Such testing and/or legal compliance necessarily requires Defendant to make and use the Accused Instrumentalities in an infringing manner.  Still further, Defendant is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Instrumentalities.

48.    As shown above, Defendant is making, using, and offering for sale the Accused Instrumentalities.

49.    Additionally, upon information and belief, Defendant owns, directs, and/or controls the infringing method operation of the Accused Instrumentalities.

50.    On information and belief, the infringement of the '003 Patent by Defendant will now be willful through the filing and service of this Complaint. The '003 Patent does not expire before February 2, 2030.

51.    In addition or in the alternative, Defendant now has knowledge and continues these actions and it indirectly infringes by way of inducing direct infringement by others and/or contributing to the infringement by others of the '003 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing services for use in systems that fall within the scope of the claims of the '003 Patent. This includes without limitation, one or more of the Accused Instrumentalities by making, using, importing offering for sale, and/or selling such services, Defendant injured Plaintiff and is thus liable to Plaintiff for infringement of the '003 Patent under 35 U.S.C. § 271.

52.    Now with knowledge of the '003 Patent, Defendant induces infringement under Title 35 U.S.C. § 271(b).  Defendant will have performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc*., 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

53.    Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd*., 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

54.    Defendant has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

55.    In addition, on information and belief, and based in part upon the clear infringement by the Accused Instrumentalities, Defendant has a practice of not performing a review of the patent

rights of others first for clearance or to assess infringement thereof prior to launching products and services. As such, Defendant has been willfully blind to the patent rights of Plaintiff.

56. The foregoing infringement on the part of Defendant has caused past and ongoing injury to Plaintiff. The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '003 Patent.

57. Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

### COUNT III
### Infringement of U.S. Patent No. 8,406,994

58. Plaintiff incorporates the above paragraphs by reference.

59. Defendant has been on actual notice of the '994 Patent at least as early as the date it received service of the Original Complaint in this litigation.

60. Plaintiff or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '994 patent, thus the damages period begins at least as early as six years prior to the date of service of the Original Complaint in this litigation.

61. Defendant manufactures, sells, offers for sale, owns, directs, and/or controls the operation of the Accused Instrumentalities and generates substantial financial revenues and benefits therefrom.

62. Defendant has directly infringed and continues to directly infringe the claims of the '994 Patent. As exemplary, Claim 1 is infringed by making, using, importing, selling, and/or offering for sale the Accused Instrumentalities. Defendant directly makes and sells the

infringing Accused Instrumentalities at least because it is solely responsible for putting the infringing systems into service by directing or controlling the systems as a whole and by obtaining the benefits therefrom.  More specifically, and on information and belief and as represented in the videos and figures above, with respect to the Accused Instrumentalities, Defendant:

- (i) practices and provides displaying the map in accordance with a location determined by the GPS receiver, wherein the map shows a route on which the GPS receiver is indicated moving along;

- (ii) practices and provides superimposing images representing objects onto the map, wherein the objects resembles structures or settings along the route, the images are superimposed along the route to create a 3D impression around the location, wherein the structures or settings include one or more of landmarks, signs, significant buildings, and exit designs, a perspective of the structures or settings changes in accordance with a direction the GPS receiver is moving, the map is not changed relatively while the images being imposed change as the structures or settings change; and

- (iii) changing the images with different color effects in reference to an input from at least one source detecting weather conditions around the location at a specific time of a day that the map is to be displayed on the GPS receiver, making the map resembling an electronically generated map with a certain level of realism in accordance with surrounding of the location of the GPS at the time of the day, wherein the color effects are in respective tones pertaining to different times of the day, and the at least

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                    35

one source includes a raining sensor, the map is shown to include a raining effect when raining happens.

63.    Further on information and belief, Defendant directly uses the infringing Accused Instrumentalities at least because it assembled the combined infringing elements and makes them collectively available in the United States, including via its Internet domain web pages and/or software applications, as well as via its internal systems and interfaces.  Further, and on information and belief, Defendant has directly infringed by using the infringing Accused Instrumentalities as part of its ongoing and regular testing and/or internal legal compliance activities.  Such testing and/or legal compliance necessarily requires Defendant to make and use the Accused Instrumentalities in an infringing manner.  Still further, Defendant is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Instrumentalities.

64.    As shown above, Defendant is making, using, and offering for sale the Accused Instrumentalities.

65.    Additionally, upon information and belief, Defendant owns, directs, and/or controls the infringing method operation of the Accused Instrumentalities.

66.    On information and belief, the infringement of the '994 Patent by Defendant will now be willful through the filing and service of this Complaint.  The '994 Patent does not expire before May 11, 2031.

67.    In addition or in the alternative, Defendant now has knowledge and continues these actions and it indirectly infringes by way of inducing direct infringement by others and/or contributing to the infringement by others of the '994 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using,

importing, offering for sale, and/or selling, without license or authority, infringing services for use in systems that fall within the scope of the claims of the '994 Patent. This includes without limitation, one or more of the Accused Instrumentalities by making, using, importing offering for sale, and/or selling such services, Defendant injured Plaintiff and is thus liable to Plaintiff for infringement of the '003 Patent under 35 U.S.C. § 271.

68.    Now with knowledge of the '994 Patent, Defendant induces infringement under Title 35 U.S.C. § 271(b).  Defendant will have performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc*., 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

69.    Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd*., 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

70.    Defendant has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory

infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

71.    In addition, on information and belief, and based in part upon the clear infringement by the Accused Instrumentalities, Defendant has a practice of not performing a review of the patent rights of others first for clearance or to assess infringement thereof prior to launching products and services.  As such, Defendant has been willfully blind to the patent rights of Plaintiff.

72.    The foregoing infringement on the part of Defendant has caused past and ongoing injury to Plaintiff.  The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '994 Patent.

73.    Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

### COUNT IV
### Infringement of U.S. Patent No. 6,292,743

74.    Plaintiff incorporates the above paragraphs by reference.

75.    Defendant has been on actual notice of the '743 Patent at least as early as the date it received service of the Original Complaint in this litigation.

76.    Plaintiff or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '743 patent, thus the damages period begins at least as early as six years prior to the date of service of the Original Complaint in this litigation, and up to is expiration on January 6, 2019.

77.    Defendant manufactures, sells, offers for sale, owns, directs, and/or controls the operation of the Accused Instrumentalities and generates substantial financial revenues and benefits therefrom.

78.    Defendant has directly infringed and continues to directly infringe the claims of the '743 Patent.  As exemplary, Claim 1 is infringed by making, using, importing, selling, and/or offering for sale the Accused Instrumentalities.  Defendant directly makes and sells the infringing Accused Instrumentalities at least because it is solely responsible for putting the infringing systems into service by directing or controlling the systems as a whole and by obtaining the benefits therefrom.  More specifically, and on information and belief and as represented in the videos and figures above and below, with respect to the Accused Instrumentalities, Defendant practices and provides a navigation system which:

- (i) practices and provides a method for providing an optimal route using real-time information for a navigation system comprising a client and a server, said server coupled to a computer network, said method comprising the steps of:

- (ii) establishing a wireless connection between the client and the server;



*See, https://www.toyota.com/connected-services/connected-services-plans/*



*See, https://www.youtube.com/watch?v=kiPysxvkmoU&t*  *(runtime at 1:34)*

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                40



*See,* *https://www.youtube.com/watch?v=jOLU2Cwym6g* *(runtime at 1:57)*



*See,* *https://www.youtube.com/watch?v=jOLU2Cwym6g* *(runtime at 3:07)*

**What is Cloud Navigation?**

The navigation system is an application that brings navigation, personalization and Intelligent Assistant together in the Audio Multimedia System.Cloud Navigation is a service of Drive Connect[62].

The system allows the customer to use voice-activated commands or the touchscreen to search for directions, find points of interest or explore local businesses.

**Features provide:**
- Route details
- Turn-by-turn guidance options
- Alternate routes
- Views of live traffic

See, https://toyotaaudioandconnectedservicessupport.com/toyota/feature/Cloud/ec033110-bc6e-11ed-8323-8731d1ffa909?model=&year=null (emphasis added)

The Navigation service offers a solution to the you whether you have a network connection or if you are offline. When online, the map information is based on vehicle location and updates as the vehicle is driven and routes are set. For offline mode, the Navigation system detects when you are near or entering an area with low connectivity and downloads the maps in advance. When a guided route is selected the system will maintain map coverage across the full route.

See, https://toyotaaudioandconnectedservicessupport.com/toyota/feature/Cloud/ec033110-bc6e-11ed-8323-8731d1ffa909?model=&year=null (emphasis added)

> With Connected Services activated and the available Drive Connect Cloud Navigation, the crisp and clear map screen can be explored with zoom, pan and tilt functionality with intuitive touch control.
>
> The cloud navigation includes Google Point-Of-Interest search capability, so navigating to a favorite destination has never been easier and you can also share your ETA with contacts in your phone book. Being Wi-Fi capable allows for system and navigation updates to be installed "over-the-air" so the vehicle will always be up to date. New roads constructed? OTA updates will allow the map to include those too.

*See,* https://pressroom.toyota.com/toyotas-all-new-audio-multimedia-system-is-here-and-it-is-a-game-changer/ *(emphasis added)*

---

**Connecting to a network using Wi-Fi®**

The multimedia system can be connected to the Internet by connecting to a Wi-Fi® network.

This function is not made available in some countries or areas.

☐ **INFORMATION**

- The reception level is displayed at the top of the screen.
- Cannot be used if the Wi-Fi® Hotspot, Apple CarPlay, or Android Auto is on.
- Some smartphone models may require establishing a connection each time.
- If networks are detected while the Wi-Fi® function is on, automatic connection will prioritize connecting to the network with the most recent connection.

---

*See,* https://assets.sia.toyota.com/publications/en/omnav-s/OM0C033U/pdf/OM0C033U.pdf *(page 108)*



*See,* *https://assets.sia.toyota.com/publications/en/omnav-s/OM0C033U/pdf/OM0C033U.pdf* *(page 134)*

- (ii) **practices and provides** transmitting start and end route designations from the client to the server;

- (iii) **practices and provides** accessing real-time information by the server;

- (iv) **practices and provides** calculating the optimal route by the server, based on the real-time information and said start and end route designations;

- (v) **practices and provides** formatting the optimal route into a non-proprietary, natural language description;

## What is Cloud Navigation?

The navigation system is an application that brings navigation, personalization and Intelligent Assistant together in the Audio Multimedia System.Cloud Navigation is a service of Drive Connect[62].

The system allows the customer to use voice-activated commands or the touchscreen to search for directions, find points of interest or explore local businesses.

### Features provide:

- Route details
- Turn-by-turn guidance options
- Alternate routes
- Views of live traffic

*See, https://toyotaaudioandconnectedservicessupport.com/toyota/feature/Cloud/ec033110-bc6e-11ed-8323-8731d1ffa909?model=&year=null (emphasis added)*



*See, https://www.youtube.com/watch?v=kBjOMAnpNTY  (runtime 0:52) (annotated)*

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                    45



*See, https://assets.sia.toyota.com/publications/en/omnav-s/OM0C033U/pdf/OM0C033U.pdf  (page 147) (annotated)*

A   Displays the distance to the next turn and an arrow indicating the turn direction.

Touch to display the directions list.

B   Displays information about the next guidance point.

[ ^ ][ v ]: Display/hide the information for the next guidance point.

C   Displays route information

- When driving along the guidance route, displays the distance, estimated travel time, and estimated time of arrival at the destination.

- When not driving along the guidance route, [**Proceed to the highlighted**] will be displayed.

- Touch [ v ] to display the destination information screen.

D   Displays guidance points.

E   Displays the guidance route.

F   Displays the current position of the vehicle.

G   Stops the active navigation.

H   Mutes voice guidance.

*See, https://assets.sia.toyota.com/publications/en/omnav-s/OM0C033U/pdf/OM0C033U.pdf (page 147)*

- (vi) practices and provides downloading said non-proprietary, natural language description to the client;

- (vii) practices and provides reconstructing the optimal route by the client using a local mapping database; and

- (viii) **practices and provides** displaying said optimal route on a display system coupled to the client.



See, *https://assets.sia.toyota.com/publications/en/omnav-s/OM0C033U/pdf/OM0C033U.pdf* (page 144) *(annotated)*

79.    Further on information and belief, Defendant directly uses the infringing Accused Instrumentalities at least because it assembled the combined infringing elements and makes them collectively available in the United States, including via its Internet domain web pages and/or software applications, as well as via its internal systems and interfaces.  Further, and on information and belief, Defendant has directly infringed by using the infringing Accused Instrumentalities as part of its ongoing and regular testing and/or internal legal compliance activities.  Such testing and/or legal compliance necessarily requires Defendant to make and

use the Accused Instrumentalities in an infringing manner.  Still further, Defendant is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Instrumentalities.

80.    As shown above, Defendant is making, using, and offering for sale the Accused Instrumentalities.

81.    Additionally, upon information and belief, Defendant owns, directs, and/or controls the infringing method operation of the Accused Instrumentalities.

82.    On information and belief, the infringement of the '743 Patent by Defendant has been willful since 2012 when BMW partnered with GPS manufacturer TomTom for its navigation devices.

See  *https://www.auto123.com/en/news/tomtom-partners-with-bmw/13084/*.    As shown below, TomTom was aware of the '743 Patent as early as 2011 in its application for its own European patent, EP2102607B1.  Upon information and belief, BMW conducts due diligence of its own systems and products to avoid infringing others' patent rights, and would have discovered the '743 Patent in its due diligence ot integrate TomTom navigation devices.



**Screenshot of Google Patent search result for patent citations to the '743 Patent**

83.    In addition or in the alternative, Defendant now has knowledge and continues these actions and it indirectly infringes by way of inducing direct infringement by others and/or contributing to the infringement by others of the '743 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing services for use in systems that fall within the scope of the claims of the '743 Patent. This includes

without limitation, one or more of the Accused Instrumentalities by making, using, importing offering for sale, and/or selling such services, Defendant injured Plaintiff and is thus liable to Plaintiff for infringement of the '743 Patent under 35 U.S.C. § 271.

84. Now with knowledge of the '743 Patent, Defendant induces infringement under Title 35 U.S.C. § 271(b).  Defendant will have performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc*., 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

85. Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd*., 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

86. Defendant has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from

distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

87.    In addition, on information and belief, and based in part upon the clear infringement by the Accused Instrumentalities, Defendant has a practice of not performing a review of the patent rights of others first for clearance or to assess infringement thereof prior to launching products and services.  As such, Defendant has been willfully blind to the patent rights of Plaintiff.

88.    The foregoing infringement on the part of Defendant has caused past and ongoing injury to Plaintiff.  The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '743 Patent.

89.    Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

## **PRAYER FOR RELIEF**

WHEREFORE, Intercurrency Software LLC respectfully requests the Court enter judgment against Defendant as follows:

1.    Declaring that Defendant has infringed the Patents-in-Suit;

2.    Awarding Plaintiff its damages suffered because of Defendant's infringement of the Patents-in-Suit;

3.    Enter a judgment awarding treble damages pursuant to 35 U.S.C. §284 for Defendant's willful infringement of the Patents-in-Suit;

4.    Awarding Plaintiff its costs, reasonable attorneys' fees, expenses, and interest; and

5.    Granting Plaintiff such further relief as the Court finds appropriate.

## JURY DEMAND

Plaintiff demands trial by   jury, under Fed. R. Civ. P. 38.


Respectfully Submitted

*/s/* Christopher A. Honea
M. Scott Fuller
    Texas Bar No. 24036607
    sfuller@ghiplaw.com
Randall Garteiser
    Texas Bar No. 24038912
    rgarteiser@ghiplaw.com
Christopher A. Honea
    Texas Bar No. 24059967
    chonea@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (903) 405-3999

**ATTORNEYS FOR PLAINTIFF**